## 43836. REID v. THE STATE.

WHITMAN, Judge. A true bill was returned against Bobby Harrell Reid charging him with larceny of a motor vehicle. Being confined in the Reidsville State Prison, Reid petitioned for a speedy trial on the indictment or, in the alternative, that it be quashed. His petition was granted and he was ordered to be taken from the prison to the Baldwin County Superior Court to stand trial. He was tried, convicted, sentenced, and taken back to Reidsville. The appeal is from the judgment of conviction and sentence. *Held:*

1. The appellant contends that he was entitled to be present on the hearing of his motion for new trial and that it was error to deny his request to do so.

Generally, it is the right of one accused of a felony to be present during the course of his trial. In most jurisdictions, this right does not extend to post-verdict procedures such as a motion for new trial. See 24 CJS 332, Criminal Law, § 1504; 21 AmJur2d 333, Criminal Law, § 308; Annot. 69 ALR2d 835. In Georgia, only questions of law, not questions of fact, are determined on a motion for new trial. Reversal is not required here because defendant was not allowed upon request to be present at the hearing on the motion.

2. The overruling of appellant's motion for new trial, as amended, is enumerated as error. With regard to the general grounds therein, the question is whether there was any competent evidence adduced at the trial to support the jury's verdict.

Three witnesses testified for the State. Mr. and Mrs. John D. Trotter testified only that their automobile had been stolen and was later recovered by authorities in Alabama and returned to them there. Mr. J. T. McKibben, Jr. testified that he was an employee of the National Automobile Theft Bureau, an organization supported by some 400 insurance companies; that the organization assists anyone who calls upon it in investigating incidents of stolen automobiles; and that he had

a conversation with the appellant while appellant was in custody at the Etowah County jail in Gadsden, Alabama. McKibben testified that prior to his conversation with Reid, he advised him that he did not have to say anything, that anything said could be used against him in court, that he had a right to consult with an attorney and to have him present, and if he could not afford an attorney that one would be obtained for him, and that he could stop discussing the matter at any time if he wished. McKibben further testified that the defendant was not threatened or abused and that his remarks were made freely and voluntarily without promises. According to McKibben, Reid then stated to him that: "[H]e stole a 1965 Oldsmobile, four-door sedan, a gold-colored; that's the way he described it; a brownish gold color, about eight miles out of Milledgeville, Georgia, on the Macon Road, sometime between 10th and June 15th of 1966, and that he carried the automobile to Attalla, Alabama, where he had obtained the salvage of a same make or year model automobile for $500 from the Clayton Kelly Salvage Yard, or junkyard; and that he took the door locks, the key number, the keys, not the keys, but the lock from this automobile, part of the frame that had the secondary numbers on it, and the serial plate, and welded them into this car that he had stolen out of Milledgeville, Georgia, and that he then traded this Oldsmobile to a fellow by the name of Clayton for a GTO Pontiac, which he had previously sold." McKibben also testified that the car which Reid described was the car which the Trotters identified as theirs. McKibben was cross examined at length.

Reid, in an unsworn statement to the jury, denied making any statements at all about stealing the car. He stated to the jury that he had purchased the car in Alabama without knowledge that it was stolen. There was no issue made as to the alleged confession's voluntariness. There was an issue as to whether any confession was made at all.

The jury was authorized to believe McKibben's testimony, i.e., that Reid had confessed to him that he had stolen the automobile. There was corroboration in the testimony of the Trotters. Thus, there is evidence to support the verdict.

3. Two special grounds of the motion for new trial are that it was error to overrule appellant's motion for mistrial made immediately after the solicitor general had made certain re-

marks in his statement to the jury, to wit: "The defendant was a member of a big gang stealing automobiles . . . It is necessary to convict the defendant to stop future crimes of this kind." These remarks were claimed to be improper argument.

Based on other testimony of McKibben and certain documents *introduced by defendant*, we think the remarks were permissible deductions and inferences from the evidence. *Owens v. State*, 120 Ga. 209 (47 SE 545); *Ingram v. State*, 97 Ga. App. 468 (6) (103 SE2d 666); *Bobo v. State*, 100 Ga. App. 643 (3) (112 SE2d 205). See also *Revill v. State*, 210 Ga. 139 (5) (78 SE2d 12); *O'Bryant v. State*, 222 Ga. 326, 328 (149 SE2d 654). Cf. *Brooks v. State*, 134 Ga. 784 (2) (68 SE 504). There was no error in overruling the motion for mistrial.

4. Another special ground of the motion for new trial was that the appellant had been subject to double jeopardy; that he has already plead guilty to "receiving, as stolen, the same automobile" in Alabama and, therefore, it is impossible for him to be guilty of stealing the same automobile in Georgia. Without deciding the merit of the contention, it was a matter for special plea (*Code Ann.* § 27-1501) to be interposed at arraignment and ruled on at that time. The record shows that no such plea was made at arraignment. Therefore, there was no error in overruling this special ground of the motion for new trial. *Hall v. State*, 103 Ga. 403 (29 SE 915).

5. The defendant filed a petition for issuance of a writ of habeas corpus ad testificandum to have certain inmates in Reidsville State Prison produced at the trial so that they could be called as witnesses by him. The petition also asked that certain other persons, for whom Alabama addresses were given, be subpoenaed. The denial of this petition is enumerated as error.

As to the Alabama witnesses, the court has no compulsory process powers without the State. With respect to the prisoners, the statute provides that a prisoner may be ordered produced when needed as a witness. *Code Ann.* § 38-2001. And see *Code* §§ 38-1505, 50-122. Some *showing* of need is contemplated. The danger and expense of producing prisoners upon a request only that they be produced because "they know material facts relative to the alleged offense in question" is obvious. The defendant listed the names of three prisoners. He might have listed thirteen or thirty or more. If the need

be shown, i.e., what is expected to be proved by each and how it bears on the case to be tried, then thirty or more may be required to be produced. But not otherwise. The order of denial recites that it had not been shown that the testimony of the inmates is material and that their attendance was necessary. There was no error in denying the petition under these circumstances.

Judgment affirmed. *Felton, C. J., and Eberhardt, J., concur.*

SUBMITTED SEPTEMBER 3, 1968—DECIDED MARCH 13, 1969.

*George D. Lawrence, Solicitor General,* for appellee.